[Civ. No. 33706.   Second Dist., Div. One.   Aug. 27, 1969.]

EVA ROQUEMORE et al., Plaintiffs and Appellants, v. LOLA ROQUEMORE, Defendant and Respondent.

Herbert L. Forer for Plaintiffs and Appellants.

Carl A. Earles for Defendant and Respondent.

WOOD, P. J.—Plaintiffs are the grandparents of Jheneen (Roquemore) Silas, a minor, who is the daughter of their son James Roquemore, now deceased, and of the defendant Lola Roquemore, now known as Lola Silas. After the death of James, Lola married Jahue Silas, Jr. Jheneen, the granddaughter, resides with her mother and Jahue Silas, Jr. Plaintiffs seek rights, under section 197.5 of the Civil Code, for visitation with Jheneen. That section provides: "If either the father or the mother of an unmarried minor child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the minor child during its minority by the superior court upon a finding that such visitation rights would be in the best interests of the minor child." While the action was pending, and after temporary visitation rights had been granted to plaintiffs, Jahue adopted Jheneen. Thereafter, defendant moved to dismiss the complaint herein on the ground that the adoption, by reason of the provisions of section 257 of the Probate Code, severed the relationship between Jheneen and the plaintiffs. That section provides in part that an adopted child shall be deemed a descendant of one who has adopted him and does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption. The court granted the motion to dismiss. Plaintiffs appeal from the minute order granting the motion. (Code Civ. Proc., § 581d.)

■ Appellants contend that the provisions of section 257 of the Probate Code do not preclude plaintiffs, as a matter of law, from maintaining an action for visitation rights under section 197.5 of the Civil Code.

The complaint alleges in part that plaintiffs were the parents of James Roquemore, who married defendant Lola Silas; Jheneen was born to James and Lola; and James died. It is also alleged (paragraph VI) that thereafter plaintiffs as paternal grandparents of Jheneen desired to visit with and be visited by Jheneen, a minor; and that defendant refused and still refuses to permit plaintiffs to visit with and be visited by Jheneen. Defendant's verified answer denies each and every allegation of paragraph VI.[1]

---

[1] Thus, the defendant has denied, in her answer, that she refused and still refuses to permit plaintiffs to visit with and be visited by Jheneen.

After a hearing on an order for defendant to show cause why plaintiffs should not have such rights, the plaintiffs were awarded temporary visitation rights for two Saturdays of each month. About a week after that award was made, Jahue filed a petition (as stepparent) to adopt Jheneen. Plaintiffs' motion to intervene in the adoption proceedings was denied by an order (in the adoption proceedings) which provided in part that ". . . the judgment . . . in the adoption proceeding will have no absolute effect *per se* in the visitation action. . . . ."; and thereafter, a decree was entered granting Jahue's petition to adopt Jheneen.

Defendant then made a motion (in visitation action) to dismiss the complaint. The notice of motion states that it will be made upon the provisions of section 257 of the Probate Code. The court granted the motion, and its order stated in part: "It is the opinion of the Court that the provisions of Section 139.5 of the Civil Code are no longer applicable in this case. The step-parent adoption of the minor resulted in severing the relationship between the minor and Eva Roquemore the plaintiff."[2]

As previously stated, appellant contends that the provisions of section 257 of the Probate Code (upon which the motion to dismiss was based) do not preclude plaintiffs from maintaining an action for visitation rights under section 197.5 (formerly § 139.5) of the Civil Code.

Section 257 of the Probate Code, which was amended in 1955,[3] is in an article of that code relating to succession and inheritance rights, and it "is limited by its express terms to matters of succession." (*Estate of Zook,* 62 Cal.2d 492, 493-494 [42 Cal.Rptr. 597, 399 P.2d 53].) It is a succession statute (see *Estate of Loyd,* 170 Cal. 85, 87-88 [148 P. 522]), and it does not appear to regulate the status of a minor child for all purposes. (See Review of Selected 1955 Code Legislation (Cont. Ed. Bar) p. 143.)

In *Estate of Zook, supra,* the decedent was the grandmother of children of her daughter and children of her son. Her will made bequests to the children. In that case, the son had divorced the mother of his children; the mother had remar-

---

[2]Section 139.5 of the Civil Code was enacted in 1965 and was repealed in 1967, when section 197.5, which is similar to section 139.5, was added to the Civil Code.

[3]A discussion of the legislative and judicial history of section 257 of the Probate Code, is in 18 Stan. L.Rev. 494 and Hastings L.J. 186. From 1874 to 1931 similar provisions were in section 228 of the Civil Code. In 1931 a correlative section (257) was added to the Probate Code. (See 7 Hastings L.J., *supra,* pp. 86-87.)

ried; and her second husband had adopted those children with the consent of their father (decedent's son). In determining the inheritance tax therein, the Controller classified the children of decedent's son as class D transferees, or strangers, and classified the children of decedent's daughter as class A transferees; and the superior court fixed the tax on the basis of the Controller's classification. On appeal, the Controller cited *Estate of Goulart*, 222 Cal.App.2d 808, 820 [35 Cal. Rptr. 465], wherein it was said that "the amendment to section 257 was intended to accomplish a complete severance of the former relationship of the adoptee with his natural, or biological, relatives, and to make them no longer 'kindred' in the eyes of the law, and on the other hand, to create a new kinship." In the *Zook* case, the Supreme Court reversed the judgment (which, in part, classified the adopted children as strangers as to the decedent, grandmother) and said (pp. 494-496): "Unquestionably the substitution of adoptive for natural parents serves a great number of social objectives. On the other hand the law should not and cannot ignore the fact that an adopted person may not in many respects be cut off from his natural family. If affection and regard remains between members of a natural family, the law should not in the name of consistency undertake to thwart the expression of those feelings when the encouragement thereof does not hinder the adoptive relationships. . . . Usually, or often, an adoption situation involves the severance, in fact as well as in law, of one set of parental bonds and the replacement thereof by another. The law of intestate succession, in section 257, recognizes this usual attitude. But in a situation where, as here, by will, a testatrix has proclaimed her intention to observe the natural family bonds, the situation may well demand different treatment. This should be particularly true where the testatrix was not a party to the adoption and thus could not be deemed to have voluntarily or constructively severed her natural family bonds with the child." The court also said that there were no statutory provisions which expressly compel that the adoption be recognized for inheritance tax purposes, and held that the adopted children were class A transferees for inheritance tax purposes.[4]

---

[4]See 18 Stan. L.Rev., *supra*, p. 503, wherein it is said: "The *Zook* court felt that absent express statutory language which required that the adoption be recognized for inheritance tax purposes as severing all blood ties, there was no reason to hinder continuing expressions of affection from members of the natural family by unduly diminishing the size of the estate through taxation. Certain writers in the fields of sociology

In the present case, the question is whether plaintiff grandparents are precluded by section 257 of the Probate Code from maintaining an action, under section 197.5 of the Civil Code, to obtain visitation rights with the minor child. There is no question herein regarding succession or inheritance rights. As previously stated, section 257 of the Probate Code is a succession statute, and it provides that an adopted child shall be a descendant of one who has adopted him "for all purposes of succession." There is no statutory requirement, in section 257 of the Probate Code or otherwise, that an adoption precludes natural grandparents of the adopted child from maintaining an action to obtain visitation rights under section 197.5 of the Civil Code. The plaintiffs herein commenced such action after their son, who was the father of the child, died, and after the mother of the child remarried. After a hearing on an order to show cause, the plaintiffs were granted temporary visitation rights. Those rights were granted at a time when the minor child was living with their mother and her second husband. Thereafter, the second husband commenced adoption proceedings. In the department of the superior court where the adoption proceeding was pending, the court denied the request of the grandparents (plaintiffs herein) to intervene in the adoption and stated that the judgment in the adoption proceedings would have no absolute effect per se on the pending action for visitation rights. After the decree of adoption had been entered, the defendant herein moved to dismiss the complaint on the ground that section 257 of the Probate Code severed the plaintiffs' relationship with the minor child. The court granted the motion and stated that the adoption severed the relationship between the child and the plaintiffs, and that the provisions of section 139.5 (now 197.5) of the Civil Code were no longer applicable herein. As above shown, section 197.5 of the Civil Code provides that parents of a deceased parent of a minor child may be granted visitation rights upon a finding that such visitation rights would be in the best interests of the minor child. In one department of

and psychology have stated that continued relationships with members of the natural family may materially aid the adopted person in adjusting to his adoptive family. These commentators suggest that rather than trying to substitute the affections of the adoptive family completely for those of the natural family, the welfare of the adopted child may be benefited by allowing the natural family to continue their expressions of affection toward the adopted child. This thesis reinforces the soundness of the decision in *Zook* not to discourage the expressions of affection between members of the natural family and the adopted child so long as they do not hinder the adoptive relationship."

the superior court plaintiffs' request for permission to appear in the adoption proceedings was denied on the basis that the adoption proceedings would not affect the visitation-rights proceeding; and, after the adoption decree was entered, the superior court, in another department, dismissed the complaint for visitation rights on the ground that as a matter of law, under the provisions of section 257 of the Probate Code, the adoption severed the relationship between the child and plaintiffs and precluded plaintiffs from maintaining the action for visitation rights. The action should not have been dismissed, but the plaintiffs should have been permitted to maintain it under the provisions of section 197.5 of the Civil Code on the basis of a question of fact as to whether such visitation rights would be in the best interests of the minor child and would not unduly hinder the adoptive relationship. The court erred in granting the motion to dismiss the complaint.

The order dismissing the complaint is reversed.

Fourt, J., and Thompson, J., concurred.

A petition for a rehearing was denied September 16, 1969, and respondent's petition for a hearing by the Supreme Court was denied October 22, 1969.